IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MARCUS BELL,

        Plaintiff,

v.

CLAYTON COUNTY POLICE
DEPARTMENT, et al.,

        Defendants.

1:14-cv-1242-WSD

## OPINION AND ORDER

This matter is before the Court on the mandatory review of Plaintiff Marcus Bell's ("Plaintiff") Amended Complaint [5] for frivolity pursuant to 28 U.S.C. § 1915(e)(2)(B).

I.    BACKGROUND

    A.    Procedural History

On April 24, 2014, Plaintiff filed his Original Complaint [1] and an application for leave to proceed *in forma paueris* ("IFP"). On April 28, 2014, Magistrate Judge Janet F. King found that Plaintiff met the financial requirements to proceed IFP and granted Plaintiff's IFP Application. Plaintiff's Original Complaint was submitted to the Court for a frivolity determination.

On June 2, 2014, the Court directed Plaintiff to amend his Original Complaint to specify the claims that Plaintiff seeks to assert against each Defendant and to allege specific facts to support those claims.

On June 13, 2014, Plaintiff filed his Amended Complaint.[1]  Plaintiff asserts claims, pursuant to 42 U.S.C. § 1983, for violation of Plaintiff's constitutional rights, defamation, and "supervisory negligence," against Sgt. Keith Singleton ("Sgt. Singleton"), Officer Robert Bordon ("Officer Bordon"), Officer Dockery (collectively, the "Officer Defendants"), the Clayton County Police Department, and Freeman Mathis & Gary ("the Firm").[2]

B.   Factual Allegations

The Amended Complaint alleges that on June 16, 2012, Plaintiff and his wife were arguing in their residence with "elevated tone[s]."  (Am. Compl. ¶ 2). Based on the suspicion that "there maybe [sic] a domestic dispute," a neighbor made an anonymous phone call to the Clayton County Police Department.  (Id.). Plaintiff asserts that Officer Kidd arrived at his residence but that Plaintiff was "afraid to speak with him due to him inquiring [about his] name and discovering

---

[1]   On December 15, 2014, Plaintiff re-filed an additional copy of his Amended Complaint [6].  Documents [5] and [6] are identical.

[2]   Plaintiff does not assert any wrongdoing on behalf of the Firm, which appears to be outside counsel for Clayton County.  To the extent Plaintiff intended to name the Firm as a Defendant, Plaintiff does not allege any factual allegations against the Firm.  The Firm is dismissed from this action.

[his] arrest warrant." (Id.). Plaintiff told his wife to answer the door. (Id.). Plaintiff asserts that Officer Kidd inquired about Plaintiff's location, but his wife responded that she was the only person at the residence. (Id.). Officer Kidd "grabbed her by the arm and pulled her outside." (Id.).

Plaintiff remained in a bedroom of the apartment. (Id. ¶ 3). After "notic[ing] [his] wife had not Returned [sic]," Plaintiff "stood up with the intentions of finding [his] wife." (Id.). Plaintiff noticed two officers outside of his bedroom window and "took it upon [himself] to hide under the bedroom bed in hope [sic] that they would soon leave." (Id.).

Plaintiff asserts that, hours later, a police dog entered the bedroom while Plaintiff remained under the bed. (Id.). The police dog allegedly did not locate Plaintiff. (Id.). Approximately ten (10) minutes later, Plaintiff observed three (3) police officers, with guns drawn, enter the bedroom. (Id.). Sgt. Singleton "said in a loud voice that this was a full search and to check under the bed []." (Id.). Plaintiff asserts that he "spoke in a loud voice informing the officers [he] was under the bed and ready to [s]urrender." (Id.).

Officer Bodron then attempted to lift up the bed for Plaintiff to come out, but "immediately after attempting to do so, Officer Dockery and Sgt. Singleton discharged their firearms[,] striking [him] multiple times." (Id. ¶ 4). Plaintiff

3

asked Officer Defendants why they shot him and "one replied [he] should have came outside earlier and they would've [sic] never shoot [sic] [him]." (Id.). The Officer Defendants "threatened" Plaintiff, asking him to "tell them where was [his] gun [sic] before the [sic] shoot [him] again and kill [him] on the spot." (Id.). Plaintiff asserts that he told the Officer Defendants that he "threw [his] gun out of the window" "out of fear for [his] life." (Id.).

Plaintiff next asserts that he was "unarmed under the bed" and there was not a "weapon on [him] nor in [his] immediate surroundings." (Id.). The Amended Complaint alleges that Plaintiff was arrested and transported to Atlanta Medical Hospital with "life threatening injuries." (Id.). As a result of the shooting, Plaintiff asserts, he "shattered" his right arm, damaged his liver, punctured his lung, endured a removal of his right kidney and "some of his intestine's [sic]." (Id. ¶ 6).

Plaintiff asserts that a local news story reported that Plaintiff "was outside beating [his] wife with a pistol and once police arrived [he] ran into [his] apartment." (Id. ¶ 4). The news report states that this event resulted in a "three (3) hour standoff and swat had to enter to get [him] out, shots were fired and [he] was arrested." (Id. ¶ 5). Plaintiff and his wife deny the news story's account of events,

and assert that it "was a cover up to why [he] had been shot [because] [n]one of these things said against [him] happened" (Id.).[3]

Plaintiff was charged with aggravated assault against his wife. (Id.). On March 25, 2013, the charges were dismissed after Plaintiff's wife and other witnesses refused to appear in court. (Id. at 10).

Plaintiff seeks damages in the amount of $3.5 million for physical and emotional injuries, lost wages, deprivation of civil rights, and defamation. Plaintiff also seeks an unspecified amount in punitive damages.

## II.   DISCUSSION

### A.   Legal Standard

A court must dismiss a complaint filed *in forma pauperis* if at any time the court determines the action is frivolous or malicious or that it fails to state a claim on which relief can be granted. 28 U.S.C. § 1915(e)(2)(B)(i)-(ii). "Failure to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard as dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6)." Wilkerson v. H&S, Inc.,

---

[3] Plaintiff attaches a copy of the news release to the Amended Complaint [5]. The article is dated June 18, 2012. (See Am. Compl. [5] at 9). In the article, Plaintiff's wife disputes the police account of the shooting and claims that she and her husband were not fighting and he did not physically assault her. (Id.). Plaintiff asserts that his wife "disput[ed] the officers [sic] account [b]y showing her body on camera and telling the media police where lieing [sic] and none of their account had ever taken place." (Id. ¶ 5).

366 F. App'x 49, 51 (11th Cir. 2010) (citing Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997)).  Under this standard, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

Review for frivolousness, on the other hand, "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'"  See Miller v. Donald, 541 F.3d 1091, 1100 (11th Cir. 2008) (quoting Neitzke v.Williams, 490 U.S. 319, 327 (1989)).  A claim is frivolous when it "has little or no chance of success," that is, when it appears "from the face of the complaint that the factual allegations are 'clearly baseless' or that the legal theories are 'indisputably meritless.'"  Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993) (quoting Neitzke, 490 U.S. at 327).

Plaintiff filed his Amended Complaint *pro se*. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations and internal quotation marks omitted). Nevertheless, a *pro se* plaintiff must comply with the threshold requirements of the Federal Rules of Civil Procedure. See Beckwith v. Bellsouth Telecomms. Inc., 146 F. App'x 368, 371 (11th Cir. 2005). "Even though a *pro se* complaint should be construed liberally, a *pro se* complaint still must state a claim upon which the Court can grant relief." Grigsby v. Thomas, 506 F. Supp. 2d 26, 28 (D.D.C. 2007). "[A] district court does not have license to rewrite a deficient pleading." Osahar v. U.S. Postal Serv., 297 F. App'x 863, 864 (11th Cir. 2008).

B. <u>Analysis</u>

i. *Section 1983 Claims Against Officer Defendants*

In his Section 1983 excessive force claims, Plaintiff contends that the Officer Defendants used excessive force, in violation of the Fourth Amendment, by shooting him while he was unarmed, causing him "life threatening injuries." (Am. Compl. ¶ 4).

"The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in

the course of an arrest." Brown v. City of Huntsville, 608 F.3d 724, 737 (11th Cir. 2010) (quoting Lee v. Ferraro, 284 F.3d 1188, 1197 (11th Cir. 2002)). The Fourth Amendment allows "some degree of physical coercion" to carry out an arrest or investigatory stop, but the force must be reasonable based on "a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Id. at 737–38 (quoting Lee, 284 F.3d at 1197; Vinyard v. Wilson, 311 F.3d 1340, 1347 (11th Cir. 2002)); accord Graham v. Connor, 490 U.S. 386, 395–96 (1989). Even if, in hindsight, the use of force was not reasonable, a law enforcement officer receives qualified immunity for use of force during an arrest "if an objectively reasonable officer in the same situation could have believed the use of force was not excessive." Brown, 608 F.3d at 738.

To evaluate the reasonableness of the use of force, "a court must evaluate several factors, including [1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." Id. (quoting Vinyard, 311 F.3d at 1347) (internal quotation marks omitted).

Here, Plaintiff alleges that he was hiding under a bed to avoid arrest because he "was afraid to go to jail and [he] was concerned about [his] families [sic] well

being" if he was arrested.  (Am. Compl. ¶ 2).  Plaintiff asserts also that he surrendered to the police officers after Sgt. Singleton "said in a loud voice that this was a full search and to check under the bed []."  (Id. ¶ 3).  After Plaintiff allegedly "surrendered," "Officer Bodron began to lift up the bed for [him] to come out and immediately after attempting to do so Officer Dockery and Sgt. Singleton discharged their firearms striking [him] multiple times."  (Id. ¶ 4).  Plaintiff alleges that he was "unarmed under the bed and there was NO [sic] weapon on [him] nor in [his] immediate surroundings."  (Id.).  At this stage of the litigation, Plaintiff has alleged, albeit barely, facts sufficient to state a plausible claim for excessive force against the Officer Defendants.

> ii.     *Plaintiff's Defamation Claim*

Plaintiff's defamation claim is required to be dismissed because, under Georgia law, it is time barred by the statute of limitations.  The applicable statute of limitations for defamation claims in Georgia is one year.  See O.C.G.A. § 9-3-33; see also McClesky v. Vericon Resources, Inc., 589 S.E.2d 854, 859 (Ga. Ct. App. 2003).  Plaintiff suffered the alleged reputation injury following his June 16, 2012, arrest.  Plaintiff submitted with his Amended Complaint a copy of the local news report, which was published on June 18, 2012.  Thus, Plaintiff had until June 18, 2013, to file a complaint alleging a defamation claim.  Plaintiff filed his

original Complaint on April 24, 2014, nearly two years after the alleged injury to his reputation. Plaintiff cannot state a claim for defamation under Georgia law, and this claim is required to be dismissed.

To the extent Plaintiff asserts his defamation claim under Section 1983, "[c]ourts recognize what might generally be termed as defamation claims as violations of due process cognizable under the Fourteenth Amendment." Grace v. Moore, No. 5:09-cv-418, 2011 WL 3268031, at *9 (M.D. Ga. July 29, 2011). A defamation tort claim "does not give rise to a § 1983 due process claim unless there is an additional constitutional injury alleged." Id. (citing Rehberg v. Paulk, 611 F.3d 828, 851 (11th Cir. 2010), cert. granted, 131 S.Ct. 1678 (2011)); see also Cypress Ins. Co. v. Clark, 144 F.3d 1435, 1438 (11th Cir. 1998). "The Supreme Court . . . held that injury to reputation, by itself, does not constitute the deprivation of a liberty or property interest protected under the Fourteenth Amendment." Behrens v. Regier, 422 F.3d 1255, 1259 (11th Cir. 1998) (citing Paul v. Davis, 424 U.S. 693, 701-02 (1976)). Thus, "in order to invoke the procedural protections of the Due Process Clause, a plaintiff [must] establish *more* than a mere defamation claim." Grace, 2011 WL 3268031, at *9 (citing Behrens, 422 F.3d at 1259). "A plaintiff must meet what courts have described as the

10

'stigma-plus' test . . . 'both a valid defamation claim (the stigma) *and* the violation of some more tangible interest (the plus)'." Id. (citing Rehberg, 611 F.3d at 852).

Plaintiff's Section 1983 defamation claim appears to be based on certain statements that Officer Tracy Jakes released to Channel 2 Action News following his arrest. The Amended Complaint alleges that these statements defamed his character by causing him "humiliation" and "emotional distress." (Am. Compl. at 5). Plaintiff does not proffer any evidence of the necessary "plus" to support a Section 1983 defamation claim. See Rehberg, 611 F.3d at 852; Behrens, 422 F.3d at 1259. Plaintiff's defamation claim is dismissed for this additional reason.

   iii.  *"Supervisory Negligence"*

In his Amended Complaint, Plaintiff appears to assert a claim against the Clayton County Police Department for "supervisory negligence." (Am. Compl. at 6). Plaintiff alleges that "[a]ll officers should be continually trained in arresting suspects following proper protocol, all officers are trained other force [sic], deadly force should be last result or used for equal Force [sic]." Id. The Clayton County Police Department is not a legal entity subject to suit. See Dean v. Barber, 951 F.2d 1210, 1214-15 (11th Cir. 1992) (stating that certain subdivisions of local or county governments, such as sheriff's departments and police departments, generally are not legal entities subject to suit). Plaintiff's "supervisory negligence"

claim against the Clayton County Police Department is thus required to be dismissed.[4]

C.     Service of Process

Rule 4(c)(3) of the Federal Rules of Civil Procedure states that "[a]t the plaintiff's request, the court may order that service be made by a United States marshal or deputy marshal or by a person specially appointed by the court.  The court must so order if the plaintiff is authorized to proceed in forma pauperis under 28 U.S.C. § 1915 . . . ."  Having authorized Plaintiff to proceed IFP on his excessive force claim, the Court orders service be made by the United States Marshal Service.

---

[4]     To the extent Plaintiff intended to assert this claim against Clayton County, "[t]here is no respondeat superior liability making a municipality liable for the wrongful actions of its police officers." See Gold v. Miami, 151 F.3d 1346, 1350 (11th Cir. 1998) (citing Monell v. Dep't of Soc. Serv., 436 U.S. 658, 691 (1978)). A plaintiff can state a Section 1983 claim against a municipality for failure to train or supervise its employees "only where the municipality inadequately trains or supervises its employees, this failure to train or supervise is a city policy, and that city policy causes the employees to violate a citizen's constitutional rights." Id. (citing City of Canton v. Harris, 489 U.S. 378, 389-91).  Plaintiff does not allege that Clayton County knew of prior excessive force claims against its officers and chose not to train or supervise its officers regarding their use of force. See id. (plaintiff may show municipality policy of inadequately training officers by showing that it knew of a need to train officers in a particular area and made a deliberate choice not to take any action); Wright v. Sheppard, 919 F.2d 665 (11th Cir. 1990) (sheriff's department not liable for deputy's actions when "no evidence of a history of widespread prior abuse . . . put the sheriff on notice of the need for improved training or supervision").

### III. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiff's excessive force claim against Officer Bodron, Officer Dockery, and Sgt. Singleton is **ALLOWED TO PROCEED**. Plaintiff's remaining claims, and his claims against Defendant Clayton County Police Department are **DISMISSED WITHOUT PREJUDICE** pursuant to 28 U.S.C. § 1915(e)(2)(B).

The Clerk is **DIRECTED** to send Plaintiff copies of a USM 285 form, summons, and initial disclosures form. Plaintiff is **DIRECTED** to complete the USM 285 form, the summons, and the initial disclosures form and return one for each Defendant to the Clerk of Court within twenty (20) days of the entry date of this Order. The Clerk is **DIRECTED** to resubmit this action to the undersigned if Plaintiff fails to comply. Plaintiff is warned that if he fails to provide accurate address information to the Clerk of Court for Defendants or fails to return the forms to the Clerk of Court within twenty (20) days of the entry date of this Order, this action may be dismissed for failure to obey a lawful order of the Court. LR 41.3 A.(2), N.D. Ga.

Upon receipt of the forms by the Clerk, the Clerk is **DIRECTED** to prepare a service waiver package for Defendants. The service waiver package must

include, two (2) Notices of Lawsuit and Request for Waiver of Service of Summons (prepared by the Clerk), two (2) Waiver of Service of Summons forms (prepared by the Clerk), an envelope addressed to the Clerk of Court with adequate first class postage for use by Defendants for return of the waiver form, one (1) copy of the complaint, one (1) copy of the initial disclosures form, and one (1) copy of this Order.  The Clerk shall retain the USM 285 forms and the summons.

Upon completion of the service waiver package(s), the Clerk is **DIRECTED** to complete the lower portion of the Notice of Lawsuit and Request for Waiver form and to mail the service waiver package to Defendants.  Defendants have a duty to avoid unnecessary costs of serving the summons.  If Defendants fail to comply with the request for waiver of service, Defendants must bear the costs of personal service unless good cause can be shown for failure to return the Waiver of Service form.

In the event Defendants do not return the Waiver of Service form to the Clerk of Court within thirty-five (35) days following the date the service waiver package was mailed, the Clerk is **DIRECTED** to prepare and transmit to the USMS a service package.  The service package must include the USM 285 form, the summons, and one (1) copy of the complaint.  Upon receipt of the service package(s), the USMS is **DIRECTED** to personally serve Defendants.  The

executed waiver form or the completed USM 285 form shall be filed with the Clerk.

**SO ORDERED** this 21st day of January, 2015.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE